**In re Ariel ACOSTA and Dolores Acosta, Debtors.**

Bankruptcy No. B–94–06243–PHX–RGM.

United States Bankruptcy Court, D. Arizona.

May 12, 1995.

Ariel Acosta, Dolores Acosta, Phoenix, AZ, debtors pro se.

Robin O'Reilly Miller, Shapior & Sutton, Phoenix, AZ, for Fleet Mortg.

Albert M. Rau, Chapter 13 Trustee, Phoenix, AZ.

ORDER GRANTING DEBTORS' MOTION TO SET ASIDE TRUSTEE'S SALE

ROBERT G. MOOREMAN, Bankruptcy Judge.

This matter is before the Court pursuant to the Debtors' Motion to Set Aside Trustee's Sale and Fleet Mortgage Corporation's response thereto. A hearing was held March 24, 1995. The Court directed the Chapter 13 Trustee to meet with the Debtors and supplement his response within 15 days. The Chapter 13 Trustee filed his Supplemental Response on April 3, 1995, noting that an amended plan was required to be filed by the Debtors before confirmation. The matter was taken under advisement thereafter.

After due consideration of the pleadings, the undisputed facts and the record herein, and under the present posture of the case, the Court finds and concludes the following in making its decision.

1. The Debtors filed their petition on July 11, 1994. It was dismissed on January 10, 1995 for the reason that the Debtors failed to

provide the Trustee with proof that their 1993 state income tax return had been filed.

2. The Debtors subsequently filed their 1993 state income tax return and the Chapter 13 Trustee was provided with verification of the filing. The Debtors then filed a Motion to Reinstate on January 27, 1995 and the case was thereafter reinstated on February 15, 1995.

3. Fleet Mortgage held the Note and Deed of Trust on the Debtor's residence and instituted a non-judicial foreclosure proceedings on March 25, 1994. The Trustee's Sale was orally continued various times but without actual or written notice at any time to the Debtors during the pendency of the Debtors' Chapter 13 proceeding. Arizona State law only requires that any new sale date and time thereof simply be announced orally at the previously scheduled sale date and time. See ARS 33–810(B):

> The person conducting the sale may, for any cause deemed in the interest of the beneficiary or trustor, or both, postpone or continue the sale from time to time, or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by *public declaration* at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. .... (Emphasis supplied.)

4. A Trustee's Sale of the Debtor's residence by Fleet Mortgage was held on February 7, 1995, during the interim dismissal period, but while the Debtors' Motion for Reinstatement was pending before this Court. Fleet Mortgage's credit bid was the highest bid and it received a Trustee's Deed dated and recorded on February 14, 1995.

5. It is undisputed that the Debtors received no actual notice of the continued Trustee's Sale. After the February Trustee's Sale and at the present time, the Debtors remain in possession of the residence.

■ ARS 33–810(B) provides that once an initial sale has been set, a postponed sale need not be directly noticed to interested parties. However the State Statute does not take into consideration the filing of an interim bankruptcy case and a continued sale date after a bankruptcy. The postponed sale dates are only required to be announced orally on the sale date even if the debtor is not present. ARS 33–810(B). It is standard practice in this jurisdiction for a mortgage company to orally postpone a Trustee's Sale during the pendency of a bankruptcy proceeding because the actual foreclosure sale is stayed pursuant to 11 U.S.C. § 362. In the event stay relief is granted or a case is dismissed, the mortgage holder will normally hold the foreclosure sale on the date which was orally announced at the previously scheduled sale and for which no additional notice has been given.

Because of the statutory scheme set forth for noticing a postponed foreclosure sale, it is foreseeable that a debtor would not realize that a foreclosure will occur until it is too late to respond. In addition, because of mailing delays, the debtor may not have received timely notice that his or her case was dismissed or that stay relief was granted prior to the orally rescheduled Trustee's Sale.

The danger of foreclosure in the bankruptcy context is even greater as the date of a postponed foreclosure sale will not be known in cases filed by a pro se debtor. Once a stayed sale date is continued without actual notice, it is indeed difficult for the pro se debtor to determine the next sale date and time. Where, as here, a creditor is attempting to extinguish the debtor's rights in property, prior oral notice is deemed by this Court as not sufficient to allow such an extreme remedy or loss. Secured creditors have a duty to provide ample notice to the bankrupt debtors of the creditor's actions in order to protect the rights of all parties. Fleet Mortgage did not provide the Debtors, or any prospective buyers, with adequate notice of the postponed foreclosure sale after the Debtors' bankruptcy petition was dismissed. The creditor relied on ARS 33–810(B) and the sale took place without notice to the Debtors after the case was dismissed, but prior to a *pending* reinstatement. The case was not reinstated until February 15, 1995. This was just a day after the continued Trustee's Sale Deed was recorded and

while the motion to reinstate was pending before the Court.

The Court finds and concludes on this record that in addition to providing adequate notice, Fleet Mortgage had a duty to determine the status of the Debtors' bankruptcy proceeding prior to taking steps to cut off the Debtors' rights in their residence without notice. The Court further finds and concludes that whether or not a motion for reinstatement had been filed, because of the intervening bankruptcy, Fleet Mortgage had a duty to provide the Debtors with *actual notice* of the rescheduled Trustee's Sale date even after dismissal of the Debtors' petition.

The rationale of this ruling is that it is an essential right under the United States Constitution that before property can be taken and sold by a creditor, due process requirements must be met. The basic due process requirements have been described as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (internal citations and quotations omitted).

The character of the notice requirements under ARS 33–810(B) are not reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of a Trustee's Sale within the context of a bankruptcy case. It may not be a violation of the automatic stay to orally continue a Trustee's Sale pursuant to state law during the pendency of a bankruptcy, see *In re Tome*, 113 B.R. 626, 630 (Bankr.C.D.Cal.1990). But, the Court in the *Tome* case stated:

> Once relief from stay has been granted, secured creditors have traditionally assumed that they may proceed with foreclosure under state law, uninhibited by any further limitations of bankruptcy law. The bankruptcy statute and rules are silent on this subject. The Court finds that this assumption is not warranted: a secured creditor may not foreclose on property of the estate without *giving further notice* beyond the minimum required by California law. (Emphasis supplied.)

As in this case, where a Trustee's Sale is continued and a Debtor's case has been dismissed, more is required to apprise the Debtors and other interested parties than the oral notice called for under the state statute and the Court holds herein that the fourteenth amendment to the United States Constitution requires due process to be accorded to a party before a creditor can divest the party's interest in property.

Due process requires actual notice be given to a debtor prior to a Trustee's Sale which is scheduled to occur after stay relief or the dismissal of a bankruptcy case. Actual notice then allows a party the opportunity to exercise their legal rights in regard to such a sale. Creditors should take stock of the totality of the circumstances, including the possibility that a case might be reinstated within a reasonable time after dismissal. This procedure also protects the creditor from possibly holding a sale in violation of the automatic stay when a case is reinstated and thereby adds fairness to the procedure.

Finally, the Court notes that the Bankruptcy Code favors allowing a debtor to have a "fresh start". The purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

This Court is aware that the provisions contained in ARS 33–810(B) do not take into

consideration this type of issue, which is strictly an issue in a bankruptcy case. Under the facts of this case, therefore, the Court finds and concludes that the Trustee's Sale held by Fleet Mortgage must be, and hereby is set aside because the Debtors were not provided with actual notice of the sale.

Accordingly,

IT IS ORDERED granting Debtor's Motion and vacating the Trustee's sale of February 7, 1995 and the deed thereon as void.

IT IS FURTHER ORDERED that the Debtors shall file an amended plan on or before June 12, 1995.