In re Harold G. ANDERSON and Betty N. Anderson, Debtors.

CARL I. BROWN AND COMPANY, Appellant,

v.

Harold G. ANDERSON and Betty N. Anderson, Appellees.

BAP No. AZ–95–1795–AsJH.

Bankruptcy No. 95–00685–PHX–RGM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 1996.

Decided April 17, 1996.

---

S. Matt Collins, Phoenix, AZ for Appellant.

Harold G. and Betty N. Anderson, Glendale, AZ, in pro. per.

Before: ASHLAND, JONES, and HAGAN, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

### STATEMENT OF FACTS

On December 22, 1994, the appellant Carl I. Brown and Company commenced a trustee sale to foreclose its deed of trust against the debtors' residence. The foreclosure sale date was set for March 24, 1995. On January 25, 1995, the debtors Harold and Betty Anderson filed a Chapter 13 petition. Their case was subsequently dismissed on February 16, 1995 for failure to file a master mailing list of creditors as required by Federal Rule of Bankruptcy Procedure 1007.

On March 23, 1995, one day prior to the scheduled trustee sale, the debtors filed a motion to reinstate their Chapter 13 case. Notice of the motion was not served on the appellant or the foreclosure trustee. On March 28, 1995, the bankruptcy court denied

reinstatement because the debtors had not paid the balance of the filing fee owing at the time. Meanwhile, the property was sold on March 24, 1995 as originally scheduled. The appellant Carl I. Brown and Company was the successful purchaser and received a trustee's deed to the property which was recorded on March 27, 1995.

On March 30, 1995, the debtors filed a second motion to reinstate their Chapter 13 case which the court granted on April 6, 1995. The appellant then filed a motion to modify the automatic stay on April 26, 1995. The motion argued that debtors had no redemptive rights in the residence under Arizona law because the sale occurred after their case had been dismissed and before it was reinstated. As such, the residence was not property of the estate under Bankruptcy Code § 541(a)(1) and therefore cause existed to lift the stay.

A hearing on appellant's relief from stay motion was scheduled for May 31, 1995. At that time, the court entertained an emergency motion by the debtors that sought to modify the court's prior reinstatement order. Specifically, the debtors requested that the court impose the automatic stay retroactive to March 23, 1995 when they first moved for reinstatement—the day prior to the foreclosure sale. After giving the appellant an opportunity to file a response to the debtors' emergency motion the court took the two matters under advisement.

On July 12, 1995 the bankruptcy court entered an order setting aside the trustee sale of the debtors' residence. The court reasoned that once a debtor files bankruptcy, even if the case is later dismissed, actual notice must be given to the debtor before a trustee sale can be held. Although the Arizona statute does not require it, the court believed that actual notice was necessary to meet constitutional due process requirements. The record did not show that the debtors received actual notice of the sale after the dismissal or during the pendency of the motion to reinstate.

Carl I. Brown and Company filed a timely notice of appeal of the bankruptcy court's order setting aside the sale.

## ISSUES PRESENTED

Whether the bankruptcy court erred in setting aside a foreclosure sale that occurred after the debtor's case was dismissed and before it was reinstated when the sale was conducted during the interim period in full compliance with state law.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed de novo. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986).

## DISCUSSION

In its order setting aside the foreclosure sale the bankruptcy court held that due process required that the debtors be given actual notice of a pending foreclosure sale upon dismissal of their case. In reaching this conclusion, the court relied upon its prior decision in *In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz.1995), a case factually similar to the one before us. In both instances, the court reasoned that once a bankruptcy case is filed and subsequently dismissed, actual notice of a pending sale is required even though not required by state law. Arizona allows a foreclosure sale to be continued by public proclamation at the time and location of the previously scheduled sale. Ariz.Rev. Stat.Ann. § 33–810(B) (Supp.1995). The statute requires no other notice and makes no provision for notice upon the filing of an intervening bankruptcy. Ariz.Rev.Stat.Ann. § 33–810 (1990 & Supp.1995).

Nonetheless, the bankruptcy court noted that debtors, particularly those representing themselves, are unlikely to understand the effects of the automatic stay. Under these circumstances actual notice is necessary to "support the essential right under the United States Constitution of Due Process." The record did not reflect that the debtors received actual notice after dismissal or during the pendency of their motion to reinstate. As a result, the court ordered that the March 24, 1995 foreclosure sale be set aside.

It is important to recall certain facts about this appeal. The debtors' case was dismissed

on February 16, 1995 for failure to file a mailing list of creditors. Although a motion to reinstate the case was filed on March 23, 1995, one day prior to the foreclosure sale, the motion was not served on the appellant or the foreclosure trustee. The motion was ultimately denied because the debtors failed to pay the balance of their filing fee. When the second motion to reinstate was filed the sale had already occurred and the trustee's deed had been recorded by the purchaser. The argument that a motion to reinstate, pending at the time of the sale, might somehow preserve debtors' rights is without merit on appeal. There was no pending motion to reinstate at the time of the sale because debtors' first motion had been denied and the second motion was brought post-sale.

As noted, *Acosta* is factually similar to our case but is not without important differences. In *Acosta,* the holder of the note and deed of trust on the debtors' residence instituted non-judicial foreclosure proceedings and the debtors subsequently filed a Chapter 13 petition. Their case was dismissed on January 10, 1995 after they failed to provide the trustee with proof of having filed state income tax returns. *Acosta,* 181 B.R. at 478. The debtors filed the returns and then moved to reinstate their case on January 27, 1995. The foreclosure sale was orally continued several times during the pendency of the debtors' case without actual or written notice to them. The case was reinstated on February 15, 1995. However, the foreclosure sale took place on February 7, 1995 during the interim dismissal period but while the debtors' motion to reinstate was pending. *Acosta,* 181 B.R. at 478.

■ *Acosta* is different from the present case in two respects. First, the foreclosure sale in *Acosta* was orally continued several times during the pendency of the bankruptcy proceeding. Arizona law allows a noticed sale to be postponed to a new date and time by making a "public declaration" at the place and time last scheduled. Ariz.Rev.Stat.Ann. § 33–810(B) (Supp.1995). The debtor need not be present and no further notice is required. The statute makes no provision for an intervening bankruptcy filing and it is standard practice to orally postpone trustee's

sales in response to the automatic stay. *Acosta,* 181 B.R. at 478. In general, continuance of a sale does not violate the automatic stay. *In re Roach,* 660 F.2d 1316, 1318–19 (9th Cir.1981); *but see In re Peters,* 184 B.R. 799 (9th Cir. BAP 1995) (continuance of a sale after confirmation of Chapter 13 plan is a violation of the automatic stay). The present case differs from *Acosta* in that the sale took place on the original noticed sale date. There were no declarations of postponement.

Second, the sale in *Acosta* occurred while a motion to reinstate was pending. In the present case, the debtors' first motion to reinstate was filed prior to the sale. However, reinstatement did not occur while that motion was pending. It was ultimately denied, and the second motion to reinstate, which was granted by the court, was filed after the sale had already occurred. In any event, the court in *Acosta* did not believe that the pendency of a motion was determinative. "[W]hether or not a motion for reinstatement had been filed, because of the intervening bankruptcy, [the creditor] had a duty to provide the Debtors with *actual notice* of the rescheduled Trustee's Sale date even after dismissal of the Debtors' petition." *Acosta,* 181 B.R. at 479 (emphasis in original).

■ The *Acosta* decision is rooted in the principle that before property can be taken and sold by a creditor constitutional due process requirements must be met. In essence this requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Acosta,* 181 B.R. at 479, citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950). The court reasoned that notice by oral declaration provided for by Arizona law did not meet this standard because it failed to take into consideration the intervening bankruptcy and subsequent continuances of the sale in response to the automatic stay. Because the sale had been continued and then the debtors' case dismissed, the court reasoned that more was required to apprise the debtors than oral notice under the statute. *Acosta,* 181 B.R. at 479.

In support of its position, *Acosta* relies on *In re Tome*, 113 B.R. 626 (Bankr.C.D.Cal. 1990). *Tome* dealt with a somewhat different situation concerning the degree of notice required to be given to a debtor when relief from stay is obtained to proceed with a foreclosure sale. In *Tome*, the debtors filed Chapter 13 several days prior to a scheduled foreclosure sale. The sale was postponed as a result. The debtors' plan was later confirmed and provided that revesting in the debtor of property of the estate be delayed until discharge or dismissal. *Tome*, 113 B.R. at 627–28. The foreclosure sale was postponed five more times during the bankruptcy. Approximately four months after confirmation, a creditor was granted relief from stay to complete foreclosure.

The debtors' Chapter 13 was subsequently dismissed and they filed a Chapter 7 petition approximately a month later. They then attempted to set aside the foreclosure sale that occurred during the interim dismissal period. The debtors argued that the oral postponement procedure under California law did not provide them with adequate due process. The *Tome* court declined to base its decision on due process grounds but did indicate that bankruptcy law, which supersedes California foreclosure law under the supremacy clause, required better notice than what was given. *Tome*, 113 B.R. at 629. As a consequence, the court set aside the foreclosure sale.

■ The *Tome* decision is instructive because it recounts potential problems stemming from "public declaration" statutes. As discussed in *Tome*, the California foreclosure statute allows postponement of a sale when that sale is stayed by operation of law, such as the situation created by an intervening bankruptcy. In such circumstances, postponement can be made by public declaration and no further notice is required. *Tome*, 113 B.R. at 630; Cal.Civ.Code § 2924g(d) (Deering Supp.1996). The *Tome* court was concerned that debtors commonly lose track of the date of the pending foreclosure sale after a bankruptcy is filed because of the series of postponements that may occur. Furthermore, they may find it difficult to ascertain the sale date because the creditor seeking foreclosure may be different than it original-

ly was because notes are frequently sold on the secondary market. *Tome*, 113 B.R. at 631.

As a result, the court held that a secured creditor must at least republish its notice of sale and give notice to the debtor as required under Cal.Civ.Code § 2924 et. seq. before it may conduct a non-judicial foreclosure sale. *Tome*, 113 B.R. at 634. In reaching this conclusion, *Tome* acknowledged that the Bankruptcy Code and Rules do not explicitly require such notice. 113 B.R. at 634. However, it argued that some protection is required to "assure that the interests of unsecured creditors ... and of the debtor under bankruptcy law are protected." *Tome*, 113 B.R. at 634.

The circumstances presented in this case are distinguishable from the bankruptcy court's earlier decision in *Acosta* and from the decision in *Tome*. Most significant is that, unlike *Acosta* and *Tome*, the trustee sale was never continued in accordance with the state's public declaration provision. The sale occurred post-dismissal on the original scheduled sale date.

■ As such, the concern expressed in *Acosta* and *Tome* that repeated continuances inhibit a debtor's ability to determine when the trustee sale will occur does not carry as much weight where no continuance has occurred. In this instance, the state mechanism for continuing the foreclosure sale by public declaration was not invoked. Therefore, we decline to address the due process issue as the appellants have presented it. An *intervening bankruptcy, without more,* is not sufficient to call into question the effectiveness of notice for a scheduled trustee sale following dismissal of the debtor's case where the sale occurred on the original scheduled date. As such, the context presented here is different from *Acosta* and *Tome*, both of which involved continued foreclosure sales.

### CONCLUSION

The bankruptcy court incorrectly determined that after a bankruptcy was filed and then dismissed that actual notice must be given to the debtors before the scheduled trustee sale can take place. The trustee sale

in this case was never continued via public declaration as provided for by state statute. Under these circumstances, there was no basis for the bankruptcy court to set aside the foreclosure sale after the debtors' case was reinstated. For the foregoing reasons, the bankruptcy court's order setting aside the sale is reversed.